IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CHERYL WILLIAMS, TRACY JACKSON,                                                          PLAINTIFFS
EDDIE MAE COOPER, TIFFANY AKINS, and
MELVIN CALDWELL, individually and on behalf
of all others similarly situated

v.                                          No. 5:10CV00032 JLH

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                                                        DEFENDANT

## OPINION AND ORDER

The issue in this case is whether an insurance company that has paid medical benefits to an insured and has a statutory lien commits an actionable wrong under Arkansas law by asserting the lien before a determination of whether the insured would be made whole by recovery from a tortfeasor. The plaintiffs were insured by State Farm Mutual Automobile Insurance Company, suffered injuries in automobile accidents in which they were without fault, received medical benefits from State Farm, settled with the insurance companies for the tortfeasors, and paid some of the proceeds of the settlements to State Farm. The plaintiffs now assert that State Farm committed the tort of bad faith, violated the Arkansas Deceptive Trade Practices Act, and breached the insurance contract. The plaintiffs seek to represent a class of Arkansas residents who have had the same experience with State Farm. State Farm has moved to dismiss the complaint for failure to state a claim. For reasons that follow, State Farm's motion is granted.

Under Arkansas law, an automobile liability insurance company that pays medical or income disability benefits has a right of reimbursement from the insured's tort recovery and has a lien on the recovery to the extent of its benefit payments. Ark. Code Ann. § 23-89-207 (2010). The right to reimbursement pursuant to section 23-89-207 is a right to subrogation vested in the insurer that is

established by statute. *Ryder v. State Farm Mut. Auto. Ins. Co.*, 371 Ark. 508, 513, 268 S.W.3d 298, 302 (2007).[1] The insurer is entitled to enforce its right of subrogation "after the insured has been fully compensated, or 'made whole,' for his total loss." *Franklin v. Healthsource of Ark.*, 328 Ark. 163, 168, 942 S.W.2d 837, 839 (1997). "[T]he precise measure of reimbursement is the amount by which the sum received by the insured from the [third party], together with the insurance proceeds, exceeds the loss sustained and the expense incurred by the insured in realizing on his claim." *Id.* at 168, 942 S.W.2d at 839-40 (*quoting* 2 Warren Freedman, *Richards on the Law of Insurance* § 12.6 (6th ed. 1990)). "[A]n insurer is not entitled to subrogation unless the insured has been fully made whole, regardless of whether the insurance contract between the insurer and insured expressly gave the insurer a right of subrogation for benefits paid." *Ryder*, 371 Ark. at 514, 268 S.W.3d at 302.

Between 2005 and 2008, each of the named plaintiffs had an automobile insurance policy with State Farm.[2] Each policy included an optional medical payment provision, personal injury protection provision, or both. The medical pay and personal injury protection provisions stated that State Farm would pay for reasonable medical expenses resulting from injuries sustained by the plaintiffs in automobile accidents. The policies also specified that State Farm would be entitled to reimbursement of those medical expenses if the plaintiffs recovered from the third-party tortfeasors responsible for their injuries.

---

[1] The right to reimbursement and the right to subrogation are technically different, but the terms are often used interchangeably. *Progressive West Ins. Co. v. Yolo County Superior Court*, 135 Cal. App. 4th 263, 273, 37 Cal. Rptr. 3d 434, 442 (Cal. Ct. App. 2005). The Supreme Court of Arkansas has used the terms interchangeably.

[2] This statement of facts is taken from the second amended complaint, the allegations of which the Court has accepted as true for purposes of ruling on the motion to dismiss. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

While insured by State Farm, each plaintiff was involved in an automobile accident in which the other party was at fault, and each plaintiff received payments from State Farm under the medical payment and personal injury protection provisions of the insurance policy. Pursuant to Arkansas Code section 23-89-207(c), State Farm therefore had a lien on any recovery obtained by the plaintiffs. Immediately after paying the plaintiffs, and before the plaintiffs had resolved their claims against the third-party tortfeasors responsible for their injuries, State Farm served "liens (or the equivalent of liens)"[3] on the third-party tortfeasors and their insurers. Subsequently, the plaintiffs resolved their claims, and the tortfeasors' insurers issued settlements check payable to both the plaintiffs and State Farm.[4] In each case, the plaintiff then paid a portion of the settlement to State Farm for subrogation or reimbursement. The plaintiffs allege that State Farm never investigated whether the plaintiffs had been fully compensated for their injuries, or "made whole," before demanding reimbursement. They also allege that State Farm never provided them with a written statement indicating whether and how they had been made whole. They allege that State Farm failed to waive its subrogation claim, which forced them to litigate to avoid paying subrogation.

The first issue[5] is whether these allegations are sufficient to state a claim for the tort of bad faith. The leading case on the tort of bad faith in Arkansas is *Aetna Casualty & Surety Co. v. Broadway Arms Corp.*, 281 Ark. 128, 664 S.W.2d 463 (1984). There the court explained:

---

[3] Sec. Am. Compl. ¶ 21.

[4] While the Court accepts this allegation as true for purposes of ruling on the motion to dismiss, the tortfeasors' insurers were prohibited by statute from making it a condition of settlement that a single check be issued jointly to the plaintiffs and to State Farm. Ark. Code Ann. § 23-89-207(d).

[5] State Farm's first argument is that the plaintiffs lack standing because they fail to allege that they were not made whole. Because the plaintiffs allege that State Farm obtained money unlawfully, the Court will assume that they have alleged an injury so as to have standing.

> We have previously recognized that bad faith is an actionable tort in Arkansas. In discussing the tort of bad faith in *Findley v. Time Ins. Co.*, 264 Ark. 647, 573 S.W.2d 908 (1978), we cited the earlier case of *Members Mutual Ins. Co. v. Blissett*, 254 Ark. 211, 492 S.W.2d 429 (1973), as authority for the premise that the tort of bad faith is an extension of the well established rule through which a liability insurance company can be held accountable in tort for failure to settle a claim within the policy limits. Although *Blissett* was decided on the question of negligence on the part of an insurer for failure to settle a third party claim within the policy limits of its insured, it did state that the action was a separate tort action. *M.B.M. Co., Inc., v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980); *Findley v. Time Ins. Co.*, *supra*; *Tri-State Ins. Co. v. Busby*, 251 Ark. 568, 473 S.W.2d 893 (1971). In *Blissett* we settled the issue when we concluded that in order to be successful a claim based on the tort of bad faith must include affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its liability under an insurance policy. Such a claim cannot be based upon good faith denial, offers to compromise a claim or for other honest errors of judgment by the insurer. Neither can this type claim be based upon negligence or bad judgment so long as the insurer is acting in good faith. We agree with the Ohio Supreme Court in *Columbus Finance v. Howard*, 42 Ohio St.2d 178, 327 N.E.2d 654 (1975), holding that in an action of this type for tort, actual malice is that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge.

*Id.* at 133-34, 664 S.W.2d at 465. Thus, "Arkansas recognizes a claim for bad faith when 'an insurance company affirmatively engages in dishonest, malicious, or oppressive conduct in order to avoid a just obligation to its insured.' " *Selmon v. Metro. Life Ins. Co.*, 372 Ark. 420, 426, 277 S.W.3d 196, 201 (2008) (*quoting Columbia Nat'l Ins. Co. v. Freeman*, 347 Ark. 423, 429, 64 S.W.3d 720, 723 (2002)). "Bad faith" is defined as "dishonest, malicious, or oppressive conduct carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge." *Unum Life Ins. Co. of Am. v. Edwards*, 362 Ark. 624, 628, 210 S.W.3d 84, 87 (2005); *see also Switzer v. Shelter Mut. Ins. Co.*, 362 Ark. 419, 433, 208 S.W.3d 792, 801 (2005). Mere negligence or denying a claim does not constitute bad faith. *Selmon*, 372 Ark. at 426, 277 S.W.3d at 202. "The standard for establishing a claim for bad faith is rigorous and difficult to satisfy." *Unum Life*, 362 Ark. at 627,

210 S.W.3d at 87. Circumstances under which the Supreme Court of Arkansas has found bad faith include

> where an insurance agent lied by stating there was no insurance coverage (*Southern Farm v. Allen*, *supra* [326 Ark. 1023, 934 S.W.2d 527 (1996)]); aggressive, abusive, and coercive conduct by a claims representative, which included conversion of the insured's wrecked car; (*Viking Insurance Co. v. Jester*, 310 Ark. 317, 836 S.W.2d 371 (1992)); and where a carrier intentionally altered insurance records to avoid a bad risk (*Employers Equitable Life Ins. Co. v. Williams*, 282 Ark. 29, 665 S.W.2d 873 (1984)).

*Switzer*, 362 Ark. at 433-34, 208 S.W.3d at 801 (quoting *Columbia Nat'l Ins. Co.*, 347 Ark. at 429, 64 S.W.3d at 723).

The plaintiffs' allegations here do not state a claim for bad faith. The only affirmative action by State Farm alleged by the plaintiffs is that State Farm asserted "liens (or the equivalent of liens)" before it was determined whether the plaintiffs would recover a sufficient amount to be made whole and failed to waive its subrogation claim without conducting an investigation to ascertain whether the insured had been made whole. The plaintiffs say that the tortfeasors' insurers then made checks jointly payable to them and to State Farm, which placed the plaintiffs in a position either of (a) litigating with State Farm or (b) paying the amount asserted in subrogation, or a portion thereof. The plaintiffs cite no authority, and the Court is aware of none, for the proposition that an insurance carrier that has paid benefits for which it may have a right to reimbursement cannot assert the existence of its lien securing the right of reimbursement before the insured obtains a recovery from the tortfeasor responsible for the injury. The Supreme Court of Arkansas has held a lien to be enforceable in a case in which the insurance company gave notice of its subrogation claim for reimbursement before its insured settled with the tortfeasor's insurance carrier. *Daves v. Hartford Accident & Indem. Co.*, 302 Ark. 242, 788 S.W.2d 733 (1990). It is difficult to see a distinction

between what Hartford did in that case and what the plaintiffs allege that State Farm has done. No claim of bad faith was asserted in *Daves* but neither did the court suggest or insinuate anywhere in its opinion that Hartford's conduct was inappropriate. Even if it should turn out that an insurance carrier may not assert its lien before its insured recovers from a tortfeasor, the plaintiffs allege nothing that would show that State Farm engaged in conduct characterized by hatred, ill will, or a spirit of revenge. The plaintiffs do not allege that State Farm lied, intentionally altered records, or otherwise engaged in deceit.[6] The plaintiffs do not allege that State Farm engaged in conduct that the Supreme Court of Arkansas would characterize as oppressive. True, the plaintiffs allege that, because the checks were made payable to them and to State Farm jointly, they had to litigate or settle with State Farm, but whenever two parties have an interest in a single fund and cannot agree on how to divide it, their only alternatives are to litigate or to settle. That the plaintiffs found themselves faced with those alternatives does not mean that State Farm engaged in oppressive conduct. The plaintiffs also allege that State Farm failed to waive its subrogation claim and did so without investigating to ascertain whether its insured had been made whole, but that allegation still does not meet the rigorous standard for bad faith established by the Supreme Court of Arkansas.

In short, the plaintiffs fail to allege that State Farm engaged in an affirmative act of misconduct that was dishonest, malicious, or oppressive or characterized by hatred, ill will, or a spirit of revenge.

---

[6] The plaintiffs argue in their brief that State Farm misrepresented its right to reimbursement and the "made whole" doctrine. That allegation does not appear in the complaint and need not be addressed here. In the context of making that argument, the plaintiffs cite Arkansas Code section 23-66-206(13). That statute does not provide a private right of action. Ark. Code Ann. § 23-66-202(b); *Design Prof'ls Ins. Co. v. Chicago Ins. Co.*, 454 F.3d 906, 911-12 (8th Cir. 2006); *Columbia Mut. Ins. Co. v. Home Mut. Fire Ins. Co.*, 74 Ark. App. 166, 174, 47 S.W.3d 909, 913 (2001). Nor do the plaintiffs contend that their claim for relief arises under that statute.

By the same token, the plaintiffs' claim for breach of contract must be dismissed. The plaintiffs do not allege that State Farm violated any specific contractual provision. Instead, in their brief they argue that State Farm breached the implied covenant of good faith and fair dealing. (Pls.' Br. p. 25.) It is true that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Aon Risk Servs. v. Meadors*, 100 Ark. App. 272, 285, 267 S.W.3d 603, 613 (2007) (*quoting Cantrell-Waind & Assocs. v. Guillaume Motorsports*, 62 Ark. App. 66, 72, 968 S.W.2d 72, 75 (1998)). The Supreme Court of Arkansas has held, however, that although every contract creates an obligation of good faith, no action will lie in tort for a violation of that obligation. *Country Corner Food & Drug, Inc. v. First State Bank*, 332 Ark. 645, 655-56, 966 S.W.2d 894, 899 (1998). The Supreme Court of Arkansas has not yet ruled whether Arkansas law recognizes a claim for breach of contract for failure to act in good faith where no provision of the contract is violated. *See Preston v. Stoops*, 373 Ark. 591, 594-95, 285 S.W.3d 606, 609-10 (2008) (finding it unnecessary to reach the issue of whether Arkansas law requires a claim for breach of contract for failing to act in good faith). The federal courts have predicted that Arkansas will not recognize such a claim. *PBS Lumber Mfg.-Camden, LLC v. First Specialty Ins. Corp.*, Civil No. 08-1078, 2010 WL 307442, at *4 (W.D. Ark. Jan. 26, 2010); *Big Impressions, L.L.C. v. Hewlett-Packard Co.*, 4:09-CV-002 BSM, 2010 WL 1417647, at *3 (E.D. Ark. Apr. 1, 2010); *In Re Price*, 403 B.R. 775, 794 (Bankr. E.D. Ark. 2009) ("Accordingly, Arkansas does not currently recognize a cause of action (in contract or tort) for violation of the obligation to act in good faith."); *see also Saber Solutions, Inc. v. Protech Solutions, Inc.*, 06-4922, 2009 WL 3128950, at *8, n.8 (D.N.J., Sept. 25, 2009); *Smith v. Lincoln Benefit Life Co.*, 08-01324, 2009 WL 789900, at *13 (W.D. Pa., Mar. 23, 2009). The tort of bad faith arises from the duty of good faith and fair dealing

implied in the contract between the parties. *See Findley*, 264 Ark. at 648, 573 S.W.2d at 908. Having carefully circumscribed the parameters of the tort of bad faith so as to require dishonest, malicious, or oppressive conduct, the Supreme Court of Arkansas would not (in this Court's view) erase those parameters by permitting a separate breach of contract claim based solely on the implied covenant of good faith and fair dealing.

The claim under the Arkansas Deceptive Trade Practices Act must be dismissed for a reason in addition to those stated above. The ADTPA does not apply to "[a]ctions or transactions permitted under laws administered by the Insurance Commissioner, the Securities Commissioner, the State Highway Commission, the Bank Commissioner, or other regulatory body or officer acting under statutory authority of this state or the United States." Ark. Code Ann. § 4-88-101(3). The plaintiffs concede that permissible insurance activities are excluded from the purview of the ADTPA. They contend, however, that State Farm's subrogation efforts were impermissible and therefore fall within the purview of the ADTPA. As this Court has previously stated, the insurance activity exception "essentially includes all insurance activity in the State of Arkansas," permissible or not. *Jones v. Unum Life Ins. Co. of Am.*, 4:06CV00547, 2006 WL 3462130, at *3 (E.D. Ark. Nov. 29, 2006); *see also Kirby v. United Am. Ins. Co.*, 4:08CV00338 JLH, 2010 WL 961723, at *1 (E.D. Ark. Mar. 15, 2010) (finding that the ADTPA did not apply to an insurance transaction even if the insurance policy was misrepresented to the consumer); *Robertson v. White*, 633 F. Supp. 954, 978 (W.D. Ark. 1986) (finding that the Consumer Protection Act, which preceded the ADTPA, "remove[d] from the purview of the Consumer Protection Act" a transaction governed by the state securities commissioner). If the Court were to follow the plaintiffs' argument to its logical conclusion, the ADTPA would apply to any action or transaction alleged to be unlawful, which would render the

exceptions listed in section 4-88-101 meaningless and would doubtless run afoul of the statutory scheme created by the Arkansas General Assembly. Furthermore, the Arkansas Insurance Code includes a Trade Practices Act that prohibits dishonest insurance practices, Ark. Code Ann. § 23-66-201 *et seq.*, but the Arkansas General Assembly has expressly stated that the Trade Practices Act in the insurance code does not create a private right of action. Ark. Code Ann. § 23-66-202(b). To hold that insurance carriers are subject to private causes of action brought pursuant to the ADTPA would be contrary to the statutory scheme established by the Arkansas General Assembly.

## CONCLUSION

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. To comply with that rule, a complaint must contain factual allegations sufficient to raise a right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 55 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). The second amended complaint fails to meet this standard. The defendant's motion to dismiss the second amended complaint is GRANTED. Document #27. The second amended complaint is dismissed without prejudice.

IT IS SO ORDERED this 22nd day of June, 2010.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE